UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

NICHOLAS E. GARBER,            )
                               )
        Plaintiff,              )
                               )
            v.                  )       Cause No. 2:20-CV-116-PPS
                               )
KILOLO KIJAKAZI,                )
Acting Commissioner of Social Security, )
                               )
        Defendant.              )

**OPINION AND ORDER**

Nicholas E. Garber appeals an administrative law judge's denial of his application for Social Security disability benefits alleging the ALJ erred in assessing his mental health challenges. After reviewing the record, I find that the ALJ's decision is supported by the substantial evidence and affirm.

**Background**

Nicholas E. Garber received disability benefits as a minor, but his benefits terminated when he turned 18. [DE 9 at 1.] This termination of benefits was approved at reconsideration and by an ALJ on August 27, 2015. [AR 15.]¹ The appeals counsel denied review on October 19, 2016. *Id.* Garber renewed his application on September 22, 2015, alleging that he was disabled as of September 27, 1994 (his date of birth). [DE 9 at 1.] This claim was denied, and the denial was affirmed at reconsideration. [AR 15.]

---

¹ The Administrative Record (AR) in this case is found at Docket Entry #9. Citations reference the Bates stamp page number in the lower right-hand corner of the AR.

Garber requested a hearing on the denial of his claim which was held on February 8, 2019. [AR 31-67.] At the hearing, the ALJ asked a medical psychological expert, Dr. Lace, to describe Garber's limitations with regards to the listings. [DE 47-52.] Dr. Lace addressed severity, stating that Garber's record reflected a consistently mild to moderate severity and that his mental status exams were all within normal limits. [AR 48-49.] Dr. Lace then discussed the B criteria in the Listings and found that Garber had a mild limitation for understanding, remembering, or applying information and a moderate limitation in concentration, persistence and maintaining pace. [AR 49-50.] He further found that none of the C criteria in the Listings were applicable. [AR 50.] The ALJ posed hypothetical and follow-up questions to a vocational expert who testified that a claimant with the limitations posed could work a myriad of unskilled jobs. [AR 53-55.]

One month later, the ALJ denied Garber's disability benefits in a written opinion. [AR 15-25.] In his opinion, the ALJ engaged in the required five-step evaluation to determine whether Garber was disabled. At Step 1, the ALJ considered whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 416.917. The ALJ determined Garber had not engaged in substantial gainful activity since September 22, 2015. [AR 18.] At Step 2, the ALJ considered whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that are "severe." 20 C.F.R. § 416.926(c). Garber agreed that he has no physical impairments; all of his issues deal with psychological disorders. [AR 36.] In that regard, the ALJ

determined that Garber had the severe impairment of bipolar I with psychotic features, schizoaffective disorder, anxiety, attention deficit hyperactivity disorder (ADHD), and obsessive-compulsive disorder (OCD). [AR 18.] During this analysis, the ALJ considered Garber's non-severe impairments from multiple medical records, including asthma and mild obesity. *Id.* At Step 3, the ALJ considered whether the claimant's impairment or combination of impairments meets or medically equals one of the applicable Social Security listings. 20 C.F.R. § 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926). The ALJ found that this combination of impairments did not meet or medically equal the severity contemplated by the Listings. [AR 18-20.]

The ALJ then determined Garber's residual functional capacity and found that he was able to perform a full range of work at all exertion levels but with the following non-exertional limitations: occasional exposure to moderate levels of pulmonary irritants, unskilled work (not to exceed SVP 2), occasional, brief and superficial interactions with the public, supervisors, and coworkers (but can receive daily assignments and status updates), a work environment with a flexible pace, at a single site with no traveling. [AR 20.] Based on testimony from a vocational expert, it was concluded that someone with Garber's limitations could nonetheless perform several unskilled jobs. [AR 24.] The ALJ therefore found Garber was not disabled within the meaning of the Social Security Act, and the Appeals Council affirmed. [AR 24, 1-4.]

## Discussion

Whether or not Garber is disabled is not for me to decide—that's the job of the

Social Security Administration. My role in the process is to review the ALJ's ruling to determine whether it applied the correct legal standards and whether the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Shideler v. Astrue,* 688 F.3d 306, 310 (7th Cir. 2012). The review is light because the Supreme Court has stated that the "substantial evidence" standard is a modest one; it is less than a preponderance of the evidence. *Richardson v. Perales,* 402 U.S. 389, 401 (1971). The standard is met "if a reasonable person would accept it as adequate to support the conclusion." *Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir. 2004). My review is guided by the fact that, while the ALJ need not address every piece of evidence, he must build a "logical bridge" between the evidence and his findings and adequately discuss the issues so that I can evaluate the validity of the agency's findings. *Shideler*, 688 F.3d at 310. The claimant bears the burden of proving a disability and presenting medical evidence supporting his allegations. *Castile v. Astrue*, 617 F.3d 923, 927 (7th Cir. 2010); 20 C.F.R. § 416.912(a).

Garber claims that the ALJ erred at Step 3 when the ALJ found that Garber's medical impairments (both individually and combined) do not meet or medically exceed the severity of Listing 12.03 for the schizophrenia spectrum and other psychotic disorders; Listing 12.04 for depression; Listing 12.06 for anxiety; and Listing 12.11 for neurodevelopment disorders. When an ALJ finds that one or more of a claimant's impairments are "severe," the ALJ needs "to consider the *aggregate* effect of this entire constellation of ailments – including those impairment that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (emphasis in original).

However, Garber bears the burden of showing that his impairments meet "*all* of the specified medical criteria." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original). In other words, it is Garber's responsibility to point to evidence in the record supporting his legal arguments. *Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) (stating it is not the court's duty to "scour a record to locate evidence supporting a party's legal argument. Perfunctory or underdeveloped arguments are waived." (internal citations omitted)).

In reviewing the ALJ's decision, I note that at step 3, the ALJ analyzed whether Garber had a combination of medically determinable impairments that met or medically equal the severity of one of the listed impairments. [AR 20.] In his analysis, the ALJ properly stated that in order to satisfy the B criteria, Garber's "mental impairments must result in at least one extreme or two marked limitations in a broad area of functioning which are: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves." [AR 18] (citing the second paragraph in each Listing). A "marked" limitation exists when a claimant's impairments seriously interfere with the "ability to independently initiate, sustain, or complete activities."[2] A "marked" limitation is "'more than moderate' but 'less than extreme.'"[3] To satisfy the B criteria of

---

[2] *Marked Limitation*, SSA, www.ssa.gov/OP_Home/cfr20/416/416-0926a.htm (last visited July 14, 2021).
[3] *Id.*

the Listings, Garber must show either an extreme limitation of one, or marked limitation of two of the following: understanding, remembering, or applying information; interacting with others; concentration, persisting, or maintaining pace; and adapting or managing oneself.[4]

Garber states that from these four areas, he has marked limitations in both understanding remembering, or applying information; and concentration, persistence, or maintaining pace. [DE 9 at 5.] He lists multiple instances in the record which he claims are "marked" limitations. *Id.* at 3-5. Garber then vaguely states that he satisfies all of the relevant criteria for the four Listings.

Along with identifying parts of the record in support, Garber attached a medical statement from Dr. Goldstein in 2016 to his brief. [DE 9-1.] My jurisdiction is limited to a review of the pleadings and the administrative record. *Papendick v. Sullivan*, 969 F.2d 298, 302 (7th Cir. 1992). I cannot consider additional evidence unless the evidence is both new and material, and Garber had good cause for not introducing it during the administrative proceeding. *Id.*; *see Stepp v. Colvin*, 795 F.3d 711, 721 n.2 (7th Cir. 2015) ("[E]vidence is considered 'new' if it was 'not in existence or available to the claimant at the time of the administrative proceeding,' and it is considered 'material' if there is a 'reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered' in the first instance." (quoting *Perkins v.*

---

[4] *12.00 Mental Disorders – Adult*, SSA, www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm#12_00 (last visited July 9, 2021).

*Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997))). However, I do not see this medical statement anywhere in the record. Garber does not argue that there is good cause why this statement was not included with the rest of the evidence. If Garber wanted the ALJ to consider this piece of evidence, it should have been included prior to the hearing on February 8, 2019. [AR 34-35.] Instead, his attorney indicated that the ALJ had all of the evidence at the time of the hearing. *Id.* So, because this medical statement was not included in the record and Garber has not shown good cause as to why it was not included, it will not be considered.

Back to the issue at hand, Garber argues he has marked limitations in both understanding, remembering, or applying information; and concentration, persistence, or maintaining pace. The ALJ specifically considered all the B criteria individually. [AR 19.] Regarding understanding, remembering, or applying information, the ALJ found that Garber had, at most, a moderate limitation regarding Listings 12.03, 12.04, 12.06, and 12.11. [AR 19.] In doing so, the ALJ considered multiple records and Garber's testimony at the hearing. [AR 19-21.] However, the ALJ found that Garber's testimony was not entirely consistent with the medical evidence. [AR 21.] Multiple records, including Dr. Goldstein's notes, consistently report that Garber's "immediate, recent, and remote memory [was] intact." [AR 22, 375, 379, 590, 605, 744, 782, 839, 842, 864, 959, 983, 1014.] Furthermore, multiple mental status examinations were all within the normal range limits. [AR 22, 590, 605, 679, 841-42.] The ALJ also discussed why he did not agree with Dr. Lace, who found that Garber only had a mild limitation in

understanding, remembering, or applying information. [AR 22-23, 49.] The ALJ acknowledged that Garber has some difficulty with memory, but that the record consistently reports his limitation is moderate, not mild. [AR 23.] In contrast, Garber has not shown that he has more than a moderate limitation that would meet the required B criteria for the four Listings. Rather, I find the substantial evidence supports the ALJ's determination that Garber has a moderate limitation in this area.

Garber also fails to show more than a moderate limitation concerning his concentration, persistence, or maintaining pace. The ALJ considered conflicting reports from Garber himself about his ability to concentrate, persist, or maintain pace. [AR 19.] He found that while Garber reported having memory problems, the records indicate that he has a normal ability to concentrate and finish tasks. [AR 19.] Specifically, the ALJ considered multiple records, including those from Dr. Goldstein, and found that Garber has a normal ability to concentrate, consistently finding Garber's attention and concentration to be intact during the mental status examinations. [AR 379, 384, 590, 679, 744, 782, 864, 959-60, 983, 1014.] On July 25, 2018, Dr. Goldstein found that Garber was withing normal limits during his mental status examination, with "good concentration and attention span." [AR 841-42.] Also, the ALJ provided additional analysis in the RFC section as to why he agreed with Dr. Lace, who found Garber only had a moderate limitation in concentrating, persisting, and maintaining pace. [AR 22-23, 50.] The ALJ found that after considering all of the evidence, Garber had a moderate limitation. [AR 19.] Garber has not shown that he has more than a moderate limitation that would meet

the required B criteria for the four Listings. I find that the substantial evidence supports the ALJ's conclusion that Garber only has a moderate limitation in concentrating, persisting, or maintaining pace.

Garber has failed to show that he has a marked limitation in two areas under the B criteria of Listings 12.03, 12.04, 12.06, or 12,11, specifically understanding, remembering, or applying information; and concentrating, persisting, or maintaining pace. In contrast, the ALJ's analysis is supported by the substantial record, Therefore, I find that Garber has failed to meet his burden of proof regarding the severity analysis.

Next, Garber criticizes the weight given to Dr. Lace's opinion and that the ALJ did not explain the weight given to the Porter-Starke Services records. [DE 9.] An ALJ need not cite every piece of evidence in the record but must build a logical bridge between the evidence and his decision. *Shideler*, 688 F.3d at 310. The claimant bears the burden of proving a disability and presenting medical evidence supporting his allegations. *Castile*, 617 F.3d at 927. Contrary to Garber's claims, the ALJ did address favorable evidence to him, including multiple records from Porter-Starke Services. [AR 19-23.] For example, I note that while he did not specifically cite to each page in Garber's list, the ALJ did consider some of those pages and multiple others from Porter-Starke Services in the decision. [AR 18-23.] The records the ALJ cites include Garber's anxiety in social situations and also report Garber's improvements in learning to utilize positive coping skills, responding well to medication and therapeutic intervention, showing improvement with communication, and completing various activities. [AR

826-29, 835, 839-41, 854, 861-62.] Indeed, the most recent record from Porter-Starke shows that Garber had made significant progress. [AR 822.] Therefore, I find that the ALJ properly considered the records from Porter-Starke Services.

Finally, Garber states, with little argument, that "it is clear that Garber is unable to maintain gainful employment per the required guidelines." [DE 9 at 7.] However, this argument is underdeveloped. Garber states that in addition to having severe mental health impairments, he is unable to concentrate for one or two-hour segments. *Id.* at 6. However, he fails to point to evidence in the record to support this claim. Even the records that Garber highlights do not limit him to one or two-hour periods. [DE 9 at 3-5.] Garber bears the burden of proving a disability and presenting medical evidence supporting his allegations, and I find that he has not done so here. *Castile*, 617 F.3d at 927.

After reviewing the decision and the evidence, I find that the ALJ's decision is supported by the substantial evidence. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) ("Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations." (internal citation omitted)). Here, the ALJ built a logical bridge connecting his decision to the substantial evidence. I further find that the ALJ properly considered the severity analysis and determined that the combination of impairments did not meet or equal the criteria considered by the Listings.

## Conclusion

For the foregoing reasons, the decision of the ALJ denying Nicholas E. Garber's application for Social Security disability benefits is **AFFIRMED**.

**SO ORDERED on July 14, 2021.**

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT